Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000711
10-MAY-2019
07:48 AM

NO. CAAP-15-0000711

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


ROBERT E. WIESENBERG, Plaintiff-Appellant,
v.
UNIVERSITY OF HAWAI'I, Defendant-Appellee,
and
JOHN DOES 1-50; JANE DOES 1-50; DOE CORPORATIONS 1-50; DOE
ENTITIES 1-50; and DOE GOVERNMENTAL UNITS/ENTITIES 1-50,
Defendants


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 13-1-2248)


MEMORANDUM OPINION
(By:  Ginoza, Chief Judge, Reifurth and Hiraoka, JJ.)

This case is before us on remand from the Hawai'i Supreme Court, Wiesenberg v. Univ. of Hawai'i, 138 Hawai'i 210, 378 P.3d 926 (2016).  Plaintiff-Appellant Robert E. Wiesenberg (**Wiesenberg**) appeals from the Final Amended Judgment in favor of Defendant-Appellee University of Hawai'i (**UH**) entered by the Circuit Court of the First Circuit[1] (**Circuit Court**) on September 21, 2015.  Wiesenberg contends that the Circuit Court erred by:

1.   failing to treat UH's Hawai'i Rules of Civil Procedure (**HRCP**) Rule 12(c) Motion for Judgment on the Pleadings (**MJP**) as one for summary judgment under HRCP Rule 56;

2.   failing to deny the MJP after Wiesenberg raised genuine issues of material fact;

3.   failing to grant Wiesenberg's HRCP Rule 56(f) request for continuance of the hearing on the MJP;

_____

[1]   The Honorable Virginia Lea Crandall presided.

4. denying Wiesenberg's Motion for Leave to File Second Amended Complaint (**Motion to Amend**); and

5. awarding attorneys' fees and costs to UH.

For the reasons explained below, we hold as follows:

1. The Circuit Court <u>did</u> treat UH's MJP as a motion for summary judgment; there is nothing in the record on appeal showing that the Circuit Court excluded the factual evidence offered through Wiesenberg's declarations and exhibits;

2. Wiesenberg's opposition to the MJP did not raise a genuine issue of material fact;

3. The Circuit Court did not abuse its discretion in denying Wiesenberg's Rule 56(f) request;

4. The Circuit Court did not abuse its discretion in denying Wiesenberg's Motion to Amend; and

5. The Circuit Court erred in awarding attorneys' fees to UH.[2]

## PROCEDURAL HISTORY

Wiesenberg filed a Complaint for Damages on August 19, 2013, as a self-represented litigant. The defendant was misidentified as "University of Hawaii, Manoa." An Amended Complaint for Unjust Enrichment (**Amended Complaint**) was filed on October 8, 2013, to correctly name UH as the defendant. On April 4, 2014, Wiesenberg - this time through counsel - filed the Motion to Amend. The Motion to Amend was denied by order entered on September 19, 2014.

On December 5, 2014, UH filed its MJP. The MJP argued that Wiesenberg's claims were time-barred by Hawaii Revised Statutes (**HRS**) § 662-4 (2016),[3] the statute of limitations

---

[2] The Circuit Court denied UH's request for an award of costs. UH has not appealed from the denial of costs.

[3] HRS § 662-4 provides:

> A tort claim against the State shall be forever barred unless action is begun within two years after the claim accrues, except in the case of a medical tort claim when the limitation of action provisions set forth in section 657-7.3 shall apply.

Neither the Complaint for Damages nor Amended Complaint allege a medical tort.

contained in the State Tort Liability Act, HRS Chapter 662 (**State Tort Liability Act**). The motion was set for hearing on January 15, 2015. On December 8, 2014, UH filed a Motion for a Protective Order Staying Discovery and the Circuit Court granted UH's ex parte motion to shorten time for the hearing. On December 23, 2014, the Circuit Court entered a protective order staying all discovery not relating to the statute of limitation issues presented by UH's MJP; the Circuit Court denied UH's request for a protective order "relating to the issue of the statute of limitations and the equitable tolling thereof."

The hearing on UH's MJP was continued until April 9, 2015 by a series of stipulations. On May 5, 2015, the Circuit Court entered an order granting UH's MJP. The Judgment was entered on June 3, 2015. UH timely filed Defendant UH's Motion for Attorneys' Fees (**Fees and Cost Motion**) on June 4, 2015. An order granting in part and denying in part the Fees and Cost Motion was entered on July 31, 2015. The Final Amended Judgment reflecting the award of attorneys' fees was entered on September 21, 2015.

## DISCUSSION

### I. The Circuit Court Treated the MJP as a Motion for Summary Judgment

HRCP Rule 12(c) provides, in relevant part:

> Motion for judgment on the pleadings. . . . If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Wiesenberg contends that the Circuit Court erred by not converting UH's MJP to an HRCP Rule 56 motion for summary judgment. The record on appeal indicates that the Circuit Court did treat the MJP as a motion for summary judgment because nothing in the record shows that the Circuit Court excluded the factual evidence offered through Wiesenberg's declarations and exhibits.

3

We first note that the MJP was supported by a declaration from one of UH's attorneys submitting three exhibits: (1) a copy of the Complaint for Damages; (2) a copy of the Amended Complaint for Unjust Enrichment; and (3) a copy of the order denying the Motion to Amend. The declaration and exhibits did not convert the MJP into a motion for summary judgment because they did not proffer any material evidentiary facts; they simply provided procedural information for the convenience of the Circuit Court. Cf. Rosa v. CWJ Contractors, Ltd., 4 Haw. App. 210, 215, 664 P.2d 745, 749 (1983) (attaching an affidavit that essentially presented no material facts did not convert a motion to dismiss into a motion for summary judgment).

Wiesenberg's memorandum in opposition, however, attached Wiesenberg's declaration and several exhibits. In addition, it incorporated by reference the declarations and exhibits contained in Wiesenberg's reply to UH's answer to the amended complaint for unjust enrichment, motion for judgment on the pleadings, motion for leave to file second amended complaint, and reply memorandum in support of motion for leave to file second amended complaint. Wiesenberg also filed a supplemental declaration and two additional exhibits. UH objected to Wiesenberg's declarations and exhibits. The Circuit Court's order granting UH's MJP does not contain rulings on UH's evidentiary objections. We do not know whether the Circuit Court orally ruled on UH's objections because the record on appeal does not contain a copy of the transcript of the hearing on the motion.[4]

_____

[4] UH contends that Wiesenberg's failure to include a copy of the transcript of the hearing on UH's MJP requires that the Circuit Court's order granting the MJP be affirmed. The transcript of the non-evidentiary hearing is not required to establish what evidence the Circuit Court considered; that is established by Wiesenberg's declarations and exhibits. Cf. Union Bldg. Materials Corp. v. Kakaako Corp., 5 Haw. App. 146, 151, 682 P.2d 82, 87 (1984) ("[I]f the appellant wishes to urge that a finding or conclusion is unsupported by the evidence, he [or she] must include a transcript of all the evidence relevant to such finding or conclusion."). Neither party contends that witnesses were called to testify at the hearing on the MJP.

If the Circuit Court had orally sustained UH's objections and excluded the proffered evidence, UH's failure to include the ruling in the order granting the MJP and its failure to order the hearing transcript prevents it from showing that the Circuit Court excluded the evidence. We

(continued...)

UH argues that the Circuit Court did not need to consider matters outside the pleadings to grant the MJP. However, HRCP Rule 12(c) states: "If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to <u>and not excluded by the court</u>, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56[.]" (underscoring added). Neither the Circuit Court's order granting the MJP nor the record on appeal establishes that the Circuit Court sustained UH's objections or otherwise excluded Wiesenberg's declarations and exhibits from consideration in ruling on the MJP; accordingly, we review the Circuit Court's order under the standard applicable to an HRCP Rule 56 motion for summary judgment. <u>See</u> <u>Lumford v. Ota</u>, 144 Hawai'i 20, 25, 434 P.3d 1215, 1220 (App. 2018) (Where "the court did not expressly state that it was excluding matters outside the pleadings in making its decision on the Motion to Dismiss [it] properly treated the Motion to Dismiss as a summary judgment motion[.]").

## II. The Circuit Court Properly Granted Summary Judgment for UH

An appellate court reviews a trial court's grant or denial of summary judgment <u>de novo</u> using the same standard applied by the trial court. <u>Nozawa v. Operating Engineers Local Union No. 3</u>, 142 Hawai'i 331, 338, 418 P.3d 1187, 1194 (2018). "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." <u>Id.</u> at 342, 418 P.3d at 1198 (citation and brackets omitted). "A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." <u>Id.</u> (citation omitted).

---

[4] (...continued)
must therefore conclude that the Circuit Court converted UH's MJP into one for summary judgment, and review its decision accordingly.

## A. Moving Party's Burden

Ordinarily on a motion for summary judgment the moving party has the burden of either (1) presenting evidence negating an element of the non-moving party's claim or affirmative defense, or (2) demonstrating that the non-moving party will be unable to carry its burden of proof at trial. Where the movant attempts to meet its burden through the latter means, the movant must show not only that the non-moving party has not placed proof in the record, but also that the non-moving party will be unable to offer proof at trial; generally, if discovery has not concluded, a summary judgment movant cannot point to the non-moving party's lack of evidence to support its initial burden of production. Ralston v. Yim, 129 Hawai'i 46, 60-61, 292 P.3d 1276, 1290-91 (2013).

In this case, however, UH did not move for summary judgment. UH's MJP required that the Circuit Court view the facts alleged in the Amended Complaint and the inferences to be drawn therefrom in the light most favorable to Wiesenberg. Hawaii Med. Ass'n v. Hawaii Med. Serv. Ass'n, Inc., 113 Hawai'i 77, 91, 148 P.3d 1179, 1193 (2006). When Wiesenberg submitted evidence outside the pleadings in opposition to the MJP, UH did two things: (a) it objected and asked the Circuit Court to exclude the proffered evidence; and (b) it argued that the evidence was not material.[5] The parties have not cited, nor have we found, any Hawai'i appellate decision on the parties' respective burdens when a defendant files a dispositive motion under HRCP Rule 12 and the plaintiff converts the motion into one for summary judgment by introducing evidence outside the pleadings that is not excluded by the trial court. We hold that when a plaintiff converts a defendant's HRCP Rule 12 motion into a Rule 56 motion for summary judgment and the moving defendant submits no declarations, exhibits or other evidence in response, a court should view the facts presented in the pleadings and the

---

[5] UH could also have submitted declarations and exhibits with its reply memorandum to rebut Wiesenberg's evidence, but if Wiesenberg's evidence had raised material facts, that would at most have created a genuine issue of material fact which would have been grounds to deny summary judgment.

evidence submitted by the plaintiff and not excluded by the trial court – and the inferences to be drawn therefrom – in the light most favorable to the plaintiff.  Nozawa, 142 Hawai'i at 342, 418 P.3d at 1198; Ralston, 129 Hawai'i at 56, 292 P.3d at 1286.  The court need not, however, accept conclusory allegations concerning the legal effect of the facts the plaintiff has alleged.  Cf. Bank of America, N.A. v. Reyes-Toledo, 143 Hawai'i 249, 262, 428 P.3d 761, 774 (2018) (analyzing HRCP Rule 12(b)(6)).  If the court finds no genuine issue of material fact and that the defendant is entitled to judgment as a matter of law, the court may grant summary judgment in favor of the defendant.

### B.    UH's Motion

UH's MJP argued that Wiesenberg's "claims as pled in the Amended Complaint are barred by the applicable statute of limitations."  The allegations in the Amended Complaint, viewed in the light most favorable to Wiesenberg, establish that Wiesenberg was accepted into UH's Library Science Department's master's degree program in 2005 and wrongfully dismissed from the program in 2007.[6]  He applied for readmission to UH in 2008 and 2009.  He was rejected both times.  He pursued UH's grievance process but was informed by UH that he would not be readmitted under any circumstances.  By August 2011 he had complied with all of UH's requirements to earn a master's degree, but UH continued to deny him a degree.  He claims:

> UH Manoa continues to deny Mr. Wiesenberg his degree by administrative process.  It has become clear the relationship between the Graduate department and the acts of Negligence, Fraud and Discrimination by University of Hawaii employees supersede the purpose of their internal processes and duty of those charged to review them.  It is a clear case of Unjust Enrichment.

With respect to Wiesenberg's damages the Amended Complaint alleges:

> Mr. Wiesenberg has now spent eight years [2005-2013] trying to earn a degree, of which six of those eight years [2007-2013] reflect a period of time where he should have been

---

[6]    Wiesenberg subsequently submitted a declaration stating that he was dismissed from UH in January 2008.

pursuing a career as a Librarian. The loss of wages and benefits from this career, the associated student loan debt required to pursue this specialized education, the time spent in Hawaii pursuing this degree and the present need to find, retrain and pay for the time and cost of another career in a different field are financial realities Mr. Wiesenberg is entitled compensation for.

Mr. Wiesenberg also requests the Court apply damages for the years of negligent actions of University of Hawaii employees and their ethical responsibilities as teachers and administrators of an educational institution.

The Amended Complaint prayed for "damages in the sum of $500,000.00 dollars and associated legal costs."[7]

UH argued that Wiesenberg's cause of action accrued when he was dismissed from the master's degree program, and that the statute of limitations applicable to his claim, HRS § 662-4, expired two years later, before the Amended Complaint was filed.[8]

## C. **Wiesenberg's Opposition**

Wiesenberg did not dispute that he was dismissed from UH at the latest by January 2008,[9] or that the two-year statute of limitations set forth in HRS § 662-4 applied to his claims.[10] Rather, Wiesenberg argued that (a) he was lulled by UH's acts and omissions into not filing suit before the statute of limitations expired, (b) UH should be estopped from denying him his degree, and (c) UH fraudulently concealed the existence of his cause of action from him.

---

[7] UH did not move to dismiss the Amended Complaint pursuant to HRS § 663-1.3 (2016) ("Ad damnum" clause prohibited).

[8] Wiesenberg's Amended Complaint was filed on October 8, 2013. However, the claims made in the Amended Complaint were based on the same factual situation as the original complaint, so they relate back to August 19, 2013, when the original complaint was filed. HRS § 657-3.5 (2016); HRCP Rule 15(c); Mauian Hotel, Inc. v. Maui Pineapple Co., 52 Haw. 563, 565, 481 P.2d 310, 312 (1971) ("[U]nder [HRCP] Rule 15(c) claims asserted after the statute [of limitations] has run will not be barred if they arose out of a timely pleaded factual situation.").

[9] See note 6, supra.

[10] The Amended Complaint is titled "Amended Complaint for Unjust Enrichment." Although a claim for "unjust enrichment" seeks equitable relief, see Lumford, 144 Hawai'i at 25, 434 P.3d at 1220, the Amended Complaint also alleged "Negligence, Fraud and Discrimination" by UH employees and was signed and filed by a self-represented Wiesenberg. Wiesenberg subsequently retained counsel, who signed the memorandum in opposition to UH's MJP.

Wiesenberg's declarations and exhibits, viewed in the light most favorable to him, establish that he was told in a letter dated August 27, 2007, that

> he only had one option to obtain his [master's] degree: "complete LIS 615 and <u>earn</u> a grade of B (3.0) or better by 15 October 2007."
>
> . . . .
>
> . . . [I]f you do not follow these conditions you will be dismissed from the university and prevented from graduating until you raise your GPA. You will not have a second chance to redo your LIS 615 Incomplete.

(format altered). Wiesenberg was not able to complete LIS 615 by October 15, 2007. He was dismissed from UH in January 2008 after having paid $58,175 in tuition over two years. He reapplied to UH in 2008 and 2009, but both applications were denied.

In July 2009, Wiesenberg's attorney contacted UH's Office of General Counsel about discussing settlement. On September 14, 2009, Wiesenberg and his attorney met with the Dean of UH's Graduate Division, Dr. Peter Garrod (**Dr. Garrod**). On September 16, 2009, Wiesenberg and his attorney met with the Chair of the UH Library and Information Science (**LIS**) Program, who expressed a willingness to consider a written settlement proposal. By letter dated December 9, 2009, Wiesenberg's attorney presented UH Associate Vice President for Legal Affairs and University Deputy General Counsel Ruth I. Tsujimura (**Tsujimura**) with "Wiesenberg's final attempt to resolve the matter without legal action." By letter dated January 29, 2010, Tsujimura informed Wiesenberg's attorney that his December 9, 2009 letter had been considered by the LIS Program. She explained that each of the proposals "would require that [Wiesenberg] be readmitted as a graduate student in the LIS Program. The LIS Program decided not to accept any of [the] proposals."

In late 2009 Dr. Garrod (UH's Graduate Division Dean) agreed to hear Wiesenberg's academic grievances. By email sent on March 2, 2010, Dr. Garrod stated:

> Yes, I remember our meeting in September 2009 in the office of the University Counsel. I believe <u>the meeting was set up in response to a letter that your counsel sent to the</u>

9

General Counsel asking whether a resolution of your concerns was possible without litigation. As I believe I explained then:

1. In order for you to complete the requirements to receive a degree, you first would have to be readmitted to the graduate program in library science.

2. That while Graduate Division determines admissibility, the actual admission decision is based on the recommendation of the graduate program.

3. The degree would only be awarded after you were recommended for it by the graduate program and the Graduate Division had verified that all requirements had been satisfied.

Normally, a student who wished to be readmitted after an absence would have to formally apply to the program. In your case, since the meeting was held to see if a resolution short of litigation were possible, in that spirit, after meeting with you and your counsel, and in an effort to assist you to see whether you want to go through the process of readmission, I suggested you directly contact the department and ask if there was a chance they would be willing to consider readmitting you.

Thus, the process was not the normal process but suggestions made in order to respond to you and your counsel's requests.

In your email dated February 25, 2010, you allege misconduct by Dr. Wertheimer. If this relates to actions taken as a faculty member, you may file a grievance or complaint with his Dean, Dr. Alan Teramura (teramura@hawaii.edu) or the Vice Chancellor for Academic Affairs, Dr. Reed Dasenbrock (rdasenbr@hawaii.edu) if it involves ethical misconduct, the complaint should go to the ethics committee, the Chair is Dr. Martin Rayner (martin@pbrc.hawaii.edu), and if it relates to being mistreated as a graduate student, I am the relevant contact.

Despite these recent events, which were attempts to see if a resolution were possible, under the existing procedure, anyone may file an application for readmission. The recent events may be telling of what the result may be, however, the decision to reapply or not is entirely yours to make.

(underscoring added). Wiesenberg filed several grievances in March 2010, and at that point "believed it was still possible to obtain [his] degree without going to court." UH denied Wiesenberg's grievances by letter dated January 8, 2011. After informing Wiesenberg that his complaints about faculty behavior needed to be addressed to the relevant dean or to the Vice Chancellor for Academic Affairs, the letter addressed the grievances about Wiesenberg's dismissal from UH and his LIS 615 grade:

> Your dismissal could have been grieved. However, the fact that you were not enrolled for the Fall 2007 semester means that <u>you would have had to apply for readmission anyway</u>. Also, your grade in LIS 615 could have been grieved. For your information there are only two ways a grade can be changed, either by the instructor or by the Academic Grievance Committee. The Academic Grievance Committee is part of the Office of Judicial Affairs under the Vice Chancellor for Students. However, given that a couple of years have past [sic] since your [sic] received the grade, <u>it is too late to grieve your grade</u>. According to the Academic Grievance Committee procedures, any grievance must be initiated not later than the end of the semester following the one in which the cause of the grievance occurred.
>
> . . . .
>
> The bottom line is that if you want to receive your [Master's] degree from the University of Hawai'i, you either have to be readmitted and receive a satisfactory grade in LIS 615 or the field would have to recommend that you be given credit for an equivalent course taken elsewhere.

(underscoring added).

By letter dated August 19, 2011, Wiesenberg informed UH that he earned an A from the University of Southern Florida in a graduate course on Collection Development and Maintenance. He stated:

> Should this grade be substituted for my current equivalent in LIS615 Collection Management at the University of Hawaii program. [sic] I will have met all of the University of Hawaii course requirements to earn a degree at your institution per the terms I was enrolled under as a student in the Fall of 2005[.]

By letter dated October 13, 2011 Patricia A. Cooper, who was by then Dean of the UH Graduate Division, informed Wiesenberg:

> Please be advised that we cannot consider your request to transfer and substitute graduate course credits earned at the University of Southern Florida.
>
> Our records indicate that you were dismissed from the Library and Information Science Program for academic reasons in 2007. A student who has been dismissed for academic reasons may not request approval to transfer in credits earned at another institution prior to readmission. Moreover, a student dismissed for academic reasons must obtain the express consent of the chair of the graduate program before reapplying to the same graduate program for the same degree objective.

A self-represented Wiesenberg filed this lawsuit on August 19, 2013.

### 1.    Lulling and Estoppel

"Typically, a claim for unjust enrichment arises out of an allegation that the plaintiff has bestowed a benefit in money, property, or services upon the defendant, and the plaintiff then seeks some form of relief in equity to prevent the unjust enrichment of the defendant." Lumford, 144 Hawai'i at 25, 434 P.3d at 1220 (citation omitted). Assuming, but not deciding, that Wiesenberg's dismissal from UH in January 2008 without receiving a degree after paying $58,175 in tuition also gives rise to a tort claim against UH, Wiesenberg's cause of action accrued no later than January 2008. A lawsuit against UH would have to be filed no later than January 2010 under HRS § 662-4. But Wiesenberg contends that UH's conduct after he was dismissed from the graduate degree program lulled him into not filing suit before January 2010.

The Hawai'i Supreme Court referred to "lulling" in Mauian Hotel, supra note 8:

> We think it is a well-settled principle that a defendant cannot avail [itself] of the bar of the statute of limitations, if it appears that [it] has done anything that would tend to lull the plaintiff into inaction, and thereby permit the limitation prescribed by the statute to run[.]
>
> This stipulation [to allow defendant Napili-Kai to file an amended cross-claim] lulled Napili-Kai into not filing its claim either as an amendment or as an independent action before the statute of limitations had run. Under the circumstances, we believe that it would be unfair, unjust and inequitable to permit Austin-Smith to plead the statute of limitations as a bar to the claim. Therefore, we hold that since Austin-Smith, by the stipulation, may have contributed to Napili-Kai's failure to file the cross claim within the period of the statute of limitations it is estopped from pleading the statute as a defense.

52 Haw. at 570-71, 481 P.2d at 315 (quotation marks and citation omitted). Thus it appears that "lulling" is not a distinct legal doctrine, but simply one application of the doctrine of equitable estoppel. See also, Vidinha v. Miyaki, 112 Hawai'i 336, 342, 145 P.3d 879, 885 (App. 2006) (Plaintiff claiming to have been lulled into inaction until statute of limitations ran on claim "must show that he or she has detrimentally relied on the representation or conduct of the person sought to be estopped

[from asserting a statute of limitations defense], and that such reliance was reasonable.") (citation omitted).

The statute of limitations at issue in both <u>Mauian Hotel</u> and <u>Vidinha</u> was HRS § 657-7.[11]  By contrast, the statute of limitations that UH contends, and that Wiesenberg does not dispute, applies to Wiesenberg's claims in this case is HRS § 662-4, which is part of the State Tort Liability Act.  UH argues that equitable estoppel cannot be used to toll a claim under the State Tort Liability Act, citing <u>Whittington v. State</u>, 72 Haw. 77, 806 P.2d 957 (1991).

The plaintiff in <u>Whittington</u> sued the State for negligence under the State Tort Liability Act.  The plaintiff was a minor when his cause of action accrued more than two years before he filed the lawsuit.  The circuit court dismissed the lawsuit as untimely pursuant to HRS § 662-4.  The plaintiff appealed, contending that HRS § 657-13[12] tolled the statute of limitations until the plaintiff attained the age of eighteen. The Hawai'i Supreme Court held that HRS § 657-13 by its terms applied only to actions specified in Part I of HRS Chapter 657. The court noted that although the statute covering non-tort claims against the State[13] expressly allowed limited minority tolling, HRS § 662-4 contained no such provision.  Since the

---

[11]     HRS § 657-7 (2016) provides:

       Actions for the recovery of compensation for damage or injury to persons or property shall be instituted within two years after the cause of action accrued, and not after, except as provided in section 657-13 [tolling by infancy, insanity, or imprisonment].

[12]     HRS § 657-13 (2016) provided:

       If any person entitled to bring any action specified in this part (excepting actions against the sheriff, chief of police, or other officers) is, at the time the cause of action accrued, . . . [w]ithin the age of eighteen years . . . such person shall be at liberty to bring such actions within the respective times limited in this part, after the disability is removed or at any time while the disability exists.

[13]     HRS § 661-5 (2016) provides:

       Every claim against the State, cognizable under this part, shall be forever barred unless the action is commenced within two years after the claim first accrues; provided that the claims of persons under legal disability shall not be barred if the action is commenced within one year after the disability has ceased.

minority tolling provision of HRS § 657-13 (2014) did not apply to claims brought under the State Tort Liability Act, and since HRS § 662-4 contained no minority tolling provision, the court affirmed the dismissal of the lawsuit.

This case presents a slightly different issue than did Whittington, in which the minority tolling provision relied on by the plaintiff was included in HRS Chapter 657, but not Chapter 662. In Mauian Hotel and Vidinha, equitable estoppel was held to apply even though no provision in HRS Chapter 657 mentioned the doctrine. Similarly, in this case Wiesenberg contends that equitable estoppel should apply even though it is not mentioned in HRS § 662-4 or anywhere else in HRS Chapter 662.[14] The parties have not cited, nor have we found, any Hawai'i appellate decision dispositive of this legal issue.[15]

A similar but not identical situation was at issue in Office of Hawaiian Affairs v. State, 110 Hawai'i 338, 133 P.3d 767 (2006) (**OHA**), rev'd on other grounds, Hawaii v. Office of Hawaiian Affairs, 556 U.S. 163 (2009). In that case the Hawai'i Supreme Court declined to equitably toll HRS § 673-10 (Supp. 2014), the statute of limitations for the Native Hawaiian Trusts Judicial Relief Act, because the court was "not aware of any facts in the record to indicate why the plaintiffs could not have

---

[14]     A similar analysis would apply had Wiesenberg purported to assert a claim under the statute governing non-tort claims against the State because HRS Chapter 661 does not contain a provision for equitable estoppel.

[15]     UH cites our summary disposition order in Gomes v. State, No. 30005, 2011 WL 1207648 (Haw. Ct. App. Mar. 30, 2011). In Gomes we noted that the application of the doctrine of equitable estoppel against the government is not favored, and held that the plaintiff's equitable tolling argument was without factual merit. We did not decide the legal issue of whether the limitation provision of HRS § 662-4 could be equitably tolled.

Wiesenberg cites Filipo v. Chang, 62 Haw. 626, 618 P.2d 295 (1980), but in that case the State was estopped from denying additional welfare assistance to the mother of an unborn child under HRS Chapter 346; the statute of limitations was not an issue in that case. See Garner v. State, 122 Hawai'i 150, 159, 223 P.3d 215, 224 (App. 2009) ("Tolling of a statute of limitation was not an issue in Filipo.").

In Waugh v. Univ. of Hawaii, 63 Haw. 117, 621 P.2d 957 (1980) the Hawai'i Supreme Court held that the doctrine of equitable estoppel did not apply because it was "apparent from the facts of this case that [the plaintiff] was not relying on any representation by [UH] in delaying the filing of suit." Id. at 130, 621 P.2d at 967 (underscoring added). It does not appear from the Waugh opinion that UH raised, or that the supreme court ruled on, the legal issue of whether the limitation provisions of HRS Chapters 661 or 662 could be equitably tolled.

brought their breach of trust claims within the two-year statute of limitations." Id. at 360, 133 P.3d at 789. Responding to the plaintiffs' argument that the court was not bound by the statute of limitations because "their claims are based in equity," id., the supreme court stated:

> We agree that we are held to the bounds of the applicable statutes of limitation inasmuch as they set specific limits on the State's waiver of sovereign immunity that we must "strictly construe" and cannot extend under these circumstances. The application of equitable tolling in this jurisdiction has been, for the most part, in the insurance context where a statute of limitations was tolled from the time a claim for benefits was filed.
>
> The federal courts generally agree that statutes of limitations accompanying a waiver of sovereign immunity should be narrowly construed. Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 94, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (citation omitted). However, unless Congress has provided otherwise, the federal courts generally apply a rebuttable presumption that a statute of limitation is subject to equitable tolling. Id. at 94, 111 S.Ct. 453. In order to toll a statute of limitations for a complaint filed after its expiration, a plaintiff must demonstrate (1) that he . . . has been pursuing his right diligently, and (2) that some extraordinary circumstance stood in his way. Extraordinary circumstances are circumstances that are beyond the control of the complainant and make it impossible to file a complaint within the statute of limitations.
>
> In the instant case, the plaintiffs do not allege any facts or cite any legal authorities in support of their claim that equitable tolling applies in this case. Moreover, we are not aware of any facts in the record to indicate why the plaintiffs could not have brought their breach of trust claims within the two-year statute of limitations.

Id. (underscoring added) (some quotation marks and citations omitted). Thus, after noting but not adopting the federal case law in effect at the time, the Hawai'i Supreme Court ruled that even under the federal standard the statute of limitations would not be tolled under the facts of that case.

Similarly, in this case there are no facts or inferences in the record establishing "[e]xtraordinary circumstances . . . beyond the control of [Wiesenberg that made] it impossible to file a complaint within the statute of limitations." OHA, 110 Hawai'i at 360, 133 P.3d at 789 (citation omitted). Wiesenberg was dismissed from UH in January 2008. Wiesenberg's own evidence establishes that by mid-2009 his counsel had contacted UH about settlement, and by letter dated December 9, 2009, had presented UH with "Wiesenberg's final

15

attempt to resolve the matter without legal action." The uncontroverted facts in the record show that Wiesenberg was prepared to, and could have, filed suit against UH before the statute of limitations ran in January 2010. The Circuit Court did not err in summarily ruling that Wiesenberg's claim for being wrongfully dismissed from UH was time-barred.

## 2. Fraudulent Concealment

Wiesenberg next contends that he created a genuine issue of material fact concerning whether UH fraudulently concealed his cause of action from him. Fraudulent concealment is the subject of HRS § 657-20 (2016).[16] Au v. Au, 63 Haw. 210, 215, 626 P.2d 173, 178 (1981). HRS § 657-20 by its terms confines its application to "any of the actions mentioned in this part [I of HRS Chapter 657 on "personal actions"] or section 663-3 [death by wrongful act.]" As noted above, Wiesenberg agrees that his claims against UH were brought pursuant to HRS Chapter 662. Nothing in HRS Chapter 662 incorporates HRS § 657-20 into the statute of limitation applicable to tort claims against the State.

Wiesenberg's opening brief cites only to federal caselaw which recognizes fraudulent concealment as a trigger for equitable estoppel. Hexcel Corp. v. Ineos Polymers, Inc., 681 F.3d 1055 (9th Cir. 2012) dealt with claims under the Sherman Act, 15 U.S.C. § 1, not HRS Chapter 662, and is therefore inapposite. In Rundgren v. Bank of New York Mellon, 777 F.Supp.2d 1224 (D. Haw. 2011), aff'd, 637 F.App'x 404 (9th Cir. 2016), the court stated:

---

[16]     HRS § 657-20 states:

        If any person who is liable to any of the actions mentioned in this part or section 663-3 [death by wrongful act], fraudulently conceals the existence of the cause of action or the identity of any person who is liable for the claim from the knowledge of the person entitled to bring the action, the action may be commenced at any time within six years after the person who is entitled to bring the same discovers or should have discovered, the existence of the cause of action or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

> [G]iven the plain language of HRS § 657-20, the court holds
> that § 657-20 is limited to causes of action mentioned in
> Part I of HRS Ch. 657 or HRS § 663-3, and therefore does not
> apply to Plaintiff's claim brought pursuant to HRS Ch. 480
> [prohibiting unfair or deceptive acts or practices in the
> conduct of any trade or commerce].

Id. at 1229. However, the federal district court then held that the applicable statute of limitations, HRS § 480-24 (2016), "may be tolled under the equitable tolling doctrine of fraudulent concealment" because HRS Chapter 480 is "to be construed liberally in order to accomplish the purpose for which it was enacted[.]" Id. at 1231 (original brackets omitted) (quoting Cieri v. Leticia Query Realty, Inc., 80 Hawaiʻi 54, 68, 905 P.2d 29, 43 (1995)).

In this case we need not decide whether HRS § 662-4 can be equitably tolled by fraudulent concealment because the record establishes that Wiesenberg was prepared to, and could have, filed suit against UH before the statute of limitations ran in January 2010. The Circuit Court did not err in summarily ruling that Wiesenberg's claim for being wrongfully dismissed from UH was time-barred.

### III. The Circuit Court Did Not Abuse its Discretion in Denying Wiesenberg a Rule 56(f) Continuance

HRCP Rule 56 provides, in relevant part:

> **(f)** When affidavits are unavailable. Should it appear from
> the affidavits of a party opposing the motion that the party
> cannot for reasons stated present by affidavit facts
> essential to justify the party's opposition, the court may
> refuse the application for judgment or may order a
> continuance to permit affidavits to be obtained or
> depositions to be taken or discovery to be had or may make
> such other order as is just.

"A trial court's decision to deny a request for a continuance pursuant to HRCP Rule 56(f) will not be reversed absent an abuse of discretion." Kaleikini v. Yoshioka, 128 Hawaiʻi 53, 67, 283 P.3d 60, 74 (2012) (citation omitted).

> [T]he request must demonstrate how postponement of a ruling
> on the motion will enable him or her, by discovery or other
> means, to rebut the movants' showing of absence of a genuine
> issue of fact. An abuse of discretion occurs where the
> trial court has clearly exceeded the bounds of reason or
> disregarded rules or principles of law or practice to the
> substantial detriment of a party litigant.

Assocs. Fin. Servs. of Hawaii, Inc. v. Richardson, 99 Hawai'i 446, 454, 56 P.3d 748, 756 (App. 2002) (brackets in original) (quoting Josue v. Isuzu Motors Am., Inc., 87 Hawai'i 413, 416, 958 P.2d 535, 538 (1998)).

Wiesenberg argues that the Circuit Court's order granting in part UH's Motion for a Protective Order Staying Discovery impaired his ability to respond to UH's MJP. But Wiesenberg himself converted UH's HRCP Rule 12 MJP into an HRCP Rule 56 motion for summary judgment by attaching a declaration and exhibits to his opposition memorandum. UH's Rule 12 MJP would otherwise have been decided as a matter of law, "view[ing] the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." Hawaii Med. Ass'n v. Hawaii Med. Serv. Ass'n, 113 Hawai'i 77, 91, 148 P.3d 1179, 1193 (2006) (citation omitted). Since Wiesenberg converted the MJP into one for summary judgment, he had no basis to request a Rule 56(f) continuance. Allowing him to do so could have the undesirable effect of encouraging plaintiffs to routinely convert Rule 12 dispositive motions into Rule 56 motions for summary judgment and automatically request a Rule 56(f) continuance in order to delay disposition of the action and inappropriately increase the costs of litigation.

Moreover, Wiesenberg's declaration in support of his Rule 56(f) request for a continuance referred only to his need "to show that [he] was lulled into believing that [he] could obtain [his] degree without going to court." The Circuit Court's December 23, 2014 protective order did not apply to discovery "relating to the issue of the statute of limitations and the equitable tolling thereof." Wiesenberg had over three months after the Circuit Court's order was entered to conduct discovery related to the issue of lulling.[17]

Finally, any discovery into Wiesenberg's claim that he was lulled into not filing his lawsuit against UH would have been

---

[17] The record on appeal indicates that UH served a response to Wiesenberg's first request for answers to interrogatories upon Wiesenberg's counsel on January 28, 2015, and a response to Wiesenberg's first request for production of documents on January 30, 2015. There is no indication in the record on appeal that Wiesenberg moved to compel further responses, or that he noticed any depositions, before the April 9, 2015 hearing on the MJP.

futile because Wiesenberg's own evidence shows that he had counsel who was prepared to, and could have, filed suit against UH before January 2010.

**IV.  The Circuit Court Did Not Abuse its Discretion in Denying the Motion to Amend**

Orders denying motions for leave to amend a complaint are reviewed for abuse of discretion.  OHA, 110 Hawaiʻi at 351, 133 P.3d at 780.  Wiesenberg's proposed second amended complaint was prepared by an attorney, contained more detailed factual allegations (most if not all of which were based upon the evidence Wiesenberg would later submit in opposition to UH's MJP), and contained four counts: (1) declaratory and injunctive relief; (2) unjust enrichment; (3) unfair or deceptive practices or acts; and (4) interference with prospective economic advantage.  The Circuit Court's order denying the Motion to Amend stated:

> Upon review and consideration of the matters submitted, the Court denies the Motion for Leave to File Second Amended Complaint; the proposed amendment is futile because the statute of limitations has run.  Plaintiff's claim accrued in December 2007 when he was dismissed from the graduate program.  The continuing tort doctrine does not apply to the alleged facts herein; Plaintiff does not allege ongoing wrongful conduct.  The alleged wrongful conduct occurred in 2007 and Plaintiff has since been unsuccessful in obtaining relief.  Equitable estoppel does not apply to extend the time period to file because there were no extraordinary circumstances beyond the control of the Plaintiff that made it impossible for him to file within the statute of limitations.  Garner v. State, 122 Haw. 150 (Haw. App. 2009).

The Circuit Court did not abuse its discretion in denying the Motion to Amend because all of the claims asserted in the proposed amended complaint related back to Wiesenberg's dismissal from the LIS Program, which happened no later than January 2008, see note 6, supra, and because by September 2009 Wiesenberg's counsel had communicated with UH's General Counsel about resolving Wiesenberg's claims, which supports the Circuit Court's statement that "there were no extraordinary circumstances beyond the control of [Wiesenberg] that made it impossible for him to file within the statute of limitations."  As explained above, all of the proposed claims would have been subject to dismissal based

on the statute of limitations. The proposed amendment was futile and the Circuit Court did not abuse its discretion by not allowing the amendment. OHA, 110 Hawai'i at 365, 133 P.3d at 794 (citing cases) (where proposed amendment to complaint could not withstand Rule 12 motion to dismiss for failure to state a claim, court may deny motion for leave to file amended complaint).

## IV. The Circuit Court Erred by Awarding Attorneys' Fees to UH

A "trial court's grant or denial of attorneys' fees and costs is reviewed under the abuse of discretion standard." Kamaka v. Goodsill Anderson Quinn & Stifel, 117 Hawai'i 92, 105, 176 P.3d 91, 104 (2008) (brackets omitted) (quoting Kahala Royal Corp. v. Goodsill Anderson Quinn & Stifel, 113 Hawai'i 251, 266, 151 P.3d 732, 747 (2007)). "An abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." Assocs. Fin. Servs., 99 Hawai'i at 454, 56 P.3d at 756 (citation omitted).

UH contends that it was entitled to recover attorneys' fees under HRS § 607-14 (2016), which provides in relevant part:

> In all the courts, in all actions in the nature of assumpsit . . . there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable[.]
>
> . . . .
>
> The above fees provided for by this section shall be assessed on the amount . . . sued for if the defendant obtains judgment.

"'Assumpsit' is a common law form of action which allows for the recovery of damages for non-performance of a contract, either express or implied, written or verbal, as well as quasi contractual obligations." Kamaka, 117 Hawai'i at 121-22, 176 P.3d at 120-21 (citation, brackets and some quotation marks omitted).

20

The Circuit Court's order on UH's Fees and Cost Motion stated:

> This action involves assumpsit and non-assumpsit claims. Plaintiff's claim for unjust enrichment seeking an award of $58,175.00 is in the nature of assumpsit, and is the claim upon which Defendant prevailed in its Motion for Judgment on the Pleadings. Plaintiff also attempted to bring equitable claims for injunctive relief for the award of a graduate degree and damages for unpled torts. Accordingly, Defendants' [sic] request for attorneys' fees pursuant to HRS § 607-14 is GRANTED, and reasonable attorneys' fees in the amount of $14,543.75 (25% of the amount sought) are GRANTED.
>
> The court DENIES Defendants' [sic] request for costs for messenger fees on the grounds that messenger fees are considered part of overhead and not recoverable. Kikuchi v. Brown, 110 Hawai'i 204 (Hawai'i App. 2006). Based upon the equites [sic] of the case, the defendants' [sic] request for photocopying costs is DENIED.

As we observed above, the Amended Complaint was signed and filed by a self-represented Wiesenberg. It did not clearly state the legal theory (or theories) upon which his claims were asserted. However, UH took the position that all claims in the Amended Complaint were time-barred by HRS § 662-4 of the State Tort Liability Act. UH did not brief or argue HRS § 661-5 (2016), which would arguably have been the statute of limitations applicable to assumpsit claims against the State. The Circuit Court agreed with UH and entered the Final Amended Judgment in favor of UH and against Wiesenberg "on all claims and causes of action asserted by Plaintiff in the Amended Complaint[.]" Having obtained judicial relief based upon the position that all of the claims in the Amended Complaint were based in tort, UH is estopped from contending that any of the claims in the Amended Complaint were in the nature of assumpsit. See Rosa, 4 Haw. App. at 218-20, 664 P.2d at 751-52 (plaintiffs, having defeated defendant's motion to dismiss by arguing that defendant was a separate entity from co-obligor against which plaintiffs had already obtained judgment, were estopped from taking an inconsistent position on summary judgment by arguing that defendant was in privity with co-obligor). The Circuit Court abused its discretion in awarding attorneys' fees to UH based upon HRS § 607-14.

UH also contends that it was also entitled to attorneys' fees under HRS § 607-14.5 (2016), which pertains to frivolous claims. Although UH argued the applicability of that statute in its Fees and Cost Motion, it was not stated as a basis for the attorneys' fee award in the Circuit Court's order, nor did the Circuit Court make the statutorily required written finding "that all or a portion of the claims . . . made by the party are frivolous and are not reasonably supported by the facts and the law in the civil action." UH did not file a cross-appeal regarding this issue.

## CONCLUSION

Based upon the foregoing, the Circuit Court's July 31, 2015 order granting in part and denying in part the Fees and Cost Motion is vacated and the portion of the September 21, 2015 Final Amended Judgment awarding attorneys' fees to UH is reversed; the Final Amended Judgment is affirmed in all other respects.

DATED: Honolulu, Hawai'i, May 10, 2019.

On the briefs:

Mark G. Valencia,
Case Lombardi & Pettit,
for Plaintiff-Appellant.

Chief Judge

Paul Alston,
John-Anderson L. Meyer,
Maile Osika,
Dentons US LLP,
for Defendant-Appellee.

Associate Judge

Carrie K. S. Okinaga,
University General Counsel,
Derek T. Mayeshiro,
Associate General Counsel,
for Defendant-Appellee.

Associate Judge

22